Jason E. Barsanti (CA Bar No. 235807)
Jason.barsanti@mbtlaw.com
**MECKLER BULGER TILSON**
**MARICK & PEARSON LLP**
575 Market Street, Suite 2200
San Francisco, CA 94105
Tel: (415) 644-0914
Fax: (415) 644-0978

Michelle Lee Flores (CA Bar No. 166737)
mflores@cozen.com
**COZEN O'CONNOR**
601 S. Figueroa Street, Suite 3700
Los Angeles, CA 90017
Tel: (213) 892-7900
Fax: (213) 902-9069

*Attorneys for Defendants*
*CARGILL INCORPORATED and*
*CARGILL ANIMAL NUTRITION*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAN WILKINS; individually, and on behalf of other members of the general public similarly situated,<br><br>                    Plaintiff,<br><br>    v.<br><br>CARGILL, INCORPORATED, an unknown business entity; CARGILL ANIMAL NUTRITION, an unknown business entity; CERRI FEED & PET SUPPLY, LLC, a California limited liability company; and DOES 1-100, inclusive,<br><br>                    Defendants. | Case No.<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332(d)(2), 1441, 1446, AND 1453 (CLASS ACTION – REMOVAL)**<br><br>**DEMAND FOR JURY TRIAL** |

1    PLEASE TAKE NOTICE that Defendants Cargill, Incorporated and Cargill
2  Animal Nutrition ("Defendants"),[1] hereby remove to this Court the state court
3  action described below, pursuant to 28 U.S.C. §§ 1332(d)(2), 1441, 1446, and
4  1453. In support thereof, Defendants state as follows:

5  **I.    THIS COURT HAS JURISDICTION**

6    1.    This Court has original jurisdiction over this action pursuant to the
7  Class Action Fairness Act of 2005 ("CAFA") 28 U.S.C. § 1332(d), which vests
8  the United States district courts with original jurisdiction of any civil action: (a)
9  that is a class action with a putative class of more than a hundred (100)
10 members; (b) in which any member of a class of plaintiffs is a citizen of a State
11 different from any defendant; and (c) in which the matter in controversy
12 exceeds the sum or value of $5,000,000, exclusive of interest and costs.  28
13 U.S.C. §1332(d).  CAFA authorizes removal of such actions in accordance with
14 28 U.S.C. §§ 1446 and 1453.  As set forth below, this case meets all of CAFA's
15 requirements for removal and is timely and properly removed by the filing of
16 this Notice.

17   2.    Pursuant to 28 U.S.C. § 1446(a), a notice of removal must: (1) be
18 signed pursuant to Rule 11 of the Federal Rules of Civil Procedure; (2) contain
19 a "short and plaint statement of the grounds for removal"; and (3) be
20 accompanied by a copy of all process, pleadings, and orders served on
21 defendant in the action.

22 **II.    VENUE IS PROPER**

23   3.    With respect to this petition for removal, venue is proper in this Court
24 pursuant to 28 U.S.C. sections 84(a), 1391 and 1446, because this action was

---

26 [1]    Defendant Cargill Animal Nutrition is not a separate corporate entity of any
27 nature, but instead is a business unit of Defendant Cargill, Incorporated.  Cerri
   Feed & Pet Supply, LLC is a separate entity from Cargill, Incorporated and is not
28 presently owned or operated in any respect by Cargill, Incorporated.

1  originally brought in the Superior Court of California for the County of Los
2  Angeles (Case No. BC532439).

3  **III.   PLEADINGS, PROCESS AND ORDERS**

4        4.     On March 4, 2015, this putative class action was commenced and is
5  currently pending in the Superior Court of California, County of Los Angeles,
6  as Case No. BC574554, entitled *Joan Wilkins, individually, and on behalf of*
7  *other members of the general public similarly situated, Plaintiff, vs. Cargill,*
8  *Incorporated, an unknown business entity; Cargill Animal Nutrition, an*
9  *unknown business entity; Cerri Feed & Pet Supply, a California limited*
10  *liability company; and DOES 1 through 100, inclusive, Defendants.*

11       5.     The Complaint asserted the following causes of action: (1) violation
12  of California Labor Code §§ 510 and 1198 (unpaid overtime); (2) violation of
13  California Labor Code §§ 226.7 and 512(a) (unpaid meal period premiums); (3)
14  violation of California Labor Code § 226.7 (unpaid rest period premiums); (4)
15  violation of California Labor Code §§ 1194, 1197, and 1197.1 (unpaid
16  minimum wages); (5) violation of California Labor Code §§ 201 and 202 (final
17  wages not timely paid); (6) violation of California Labor Code §§ 204 (wages
18  not timely paid during employment); (7) violation of California Labor Code §
19  226(a) (non-compliant wage statements); (8) violation of California Labor
20  Code § 1174(d) (failure to keep requisite payroll records); (9) violation of
21  California Labor Code §§ 2800 and 2802 (unreimbursed business expenses);
22  and (10) violation of California Business & Professions Code §§ 17200, et. seq.
23  (**Exhibit A**, Complaint.)

24       6.     On March 17, 2015, Cargill, Incorporated was served with the
25  Complaint.   Attached hereto as **Exhibit B** is a true copy of the documents
26  served on Cargill, Incorporated including the Notice of Service of Process,
27  Summons, Complaint, Notice of Case Assignment, Civil Case Cover Sheet and
28

-3-

1  Addendum, Voluntary Efficient Litigation Stipulations, and Proof of Service of

2  Summons.

3         7.     Pursuant to 28 U.S.C. section 1446(a), according to the docket, a copy

4  of which is attached at **Exhibit C**, Plaintiff filed Return of Service of Summons

5  and Complaint on April 2, 2015 with respect to Defendant Cerri Feed & Animal

6  Nutrition, LLC.   That document was not served on Defendants.   However,

7  Defendant Cargill, Incorporated obtained a copy of that document and a copy is

8  attached hereto as **Exhibit D**.   The attached exhibits constitute all process,

9  pleadings and orders served upon Defendants or filed or received in this action by

10  Defendants.  Defendants have not filed an Answer in the action in superior court.

11  **IV.   CARGILL HAS SATISFIED THE PROCEDURAL REQUIREMENTS**
12  **FOR REMOVAL**

13        **A.   This Removal Petition is Timely**

14         8.     Plaintiff personally served the Summons and Complaint on Cargill

15  Incorporated's agent on March 17, 2015, as attested by her Proof of Service of

16  Summons contained in **Exhibit B**.  Pursuant to 28 U.S.C. section 1446(b) and

17  Federal Rule of Civil Procedure, Rule 6(a)(1)(C), this Notice of Removal is

18  therefore timely filed as it is filed within thirty (30) days after Defendant was

19  served with the Summons and Complaint and within one year after

20  commencement of this action.  See *Murphy Bros., Inc. v. Michetti Pipe*

21  *Stringing, Inc.*, 526 U.S. 344, 356 (1999) (30-day removal period runs from the

22  service of the summons and complaint).

23        **B.   The Procedural Requirements of Removal Are Met**

24         9.     Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and

25  orders served upon Defendant are attached as **Exhibit B** to this Notice of Removal.

26  Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served

27  upon counsel for Plaintiff and a "Notice to State Court and Adverse Parties of

28  Removal of Action" (to include a copy of this Notice of Removal and all Exhibits)

-4-

1  will be promptly filed with the Clerk of the Superior Court in Los Angeles County,
2  and served on all other parties to this action.

3  **V.    THIS COURT HAS JURISDICTION UNDER CAFA**

4        10.    In its recent decision in *Dart Cherokee Basin Operating Co. v. Owens*,
5  135 S.Ct. 547 (2014), the United States Supreme Court clarified the standards
6  applicable to notices of removal in CAFA cases, confirming a liberal standard in
7  favor of removing defendants.   Specifically, the Supreme Court found that the
8  similarity of language between the removal statute and Rule 8(a) can only mean
9  that the same liberal pleading standards applied to complaints must also apply to
10 notices of removal.  *Id.*   The Supreme Court also held in *Dart* that a removing
11 defendant is **not required** to include evidence with its pleading in order to establish
12 that the elements of federal subject matter jurisdiction are met.  *Id.* at 552-553.
13 Only if the Court or another party challenges jurisdiction should the Court require a
14 removing defendant to prove, under the applicable "preponderance" standard, that
15 the jurisdictional requirements are met.   "In sum, as specified in § 1446(a), a
16 defendant's notice of removal need include only a plausible allegation that the
17 amount in controversy exceeds the jurisdictional threshold. Evidence establishing
18 the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the
19 court questions, the defendant's allegation."  *Id.* at 554.  In addition, there exists no
20 "presumption against removal" in CAFA cases, because CAFA was specifically
21 enacted by Congress "to facilitate adjudication of certain class actions in federal
22 court." *Id.*

23        11.    This Court has diversity jurisdiction over Plaintiff's action pursuant to
24 the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).   Under CAFA,
25 federal district courts have original jurisdiction over a class action if (1) it involves
26 100 or more putative class members, (2) any class member is a citizen of a state
27 different from any defendant, and (3) the aggregated amount in controversy exceeds
28 $5,000,000 (exclusive of costs and interest).  *See* 28 U.S.C. §§ 1332(d)(2), d(5), and

(d)(6).[2]  CAFA applies to "class actions," which the statute defines as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute." 28 U.S.C. § 1332(d)(1)(B).

**A.** **Plaintiff Is Asserting A Class Action Against Cargill, Incorporated**

12.  Plaintiff plainly brings this lawsuit as a class action.  The Complaint itself is titled "CLASS ACTION COMPLAINT FOR DAMAGES," Plaintiff seeks to act as a class representative "on behalf of other members of the general public," and Plaintiff states in the very first paragraph that "[t]his class action is brought pursuant to the California Code of Civil Procedure section 382." (**Exhibit A**, Complaint at Caption and ¶ 1.)   Accordingly, CAFA applies.  *E.g.*, *Bodner v. Oreck Direct, LLC*, No. C 0604756, 2006 WL 2925691, at *3 (N.D. Cal. Oct. 12, 2006) (CAFA applies where "Plaintiffs' complaint alleges that the action is a class action, and recites the prerequisites to a class action under . . . California Code of Civil Procedure Section 382").

**B.** **The Number of Putative Class Members Exceeds 100**

13.  Plaintiff seeks to represent a class of "All current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment." (**Exhibit A**, Complaint at ¶ 15.)

/ / /

/ / /

/ / /

---

[2]  Wilkins alleges that the amount of her individual claim for recovery is less than $75,000.  Even if true, this allegation bears no significance because the $75,000 threshold is not applicable to a class action removal under CAFA. *See* 28 U.S.C. 1332(d)(2) & (6).

14.     Although Plaintiff's Complaint does not allege a specific number of persons who meet his proposed class definition,[3] based upon inspection of Cargill, Incorporated's employment records the number of individuals employed by Cargill, Incorporated in California during the time period from March 4, 2011 to the present exceeds 100.  In fact, over that time period, Cargill, Incorporated has employed workers in an average of more than 300 positions at as many as 11 locations.

**C.     None of the Defendants is a Governmental Entity**

15.     Under 28 U.S.C. § 1332(d)(5)(B), CAFA does not apply to class actions where the "primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief."

16.     Cargill, Incorporated is a corporation incorporated in Delaware and is not a state, state official or other government entity exempt from CAFA.

17.     Cargill Animal Nutrition is a business unit of Cargill, Incorporated and is not a state, state official or other government entity exempt from CAFA.

18.     According to Plaintiff's allegations, Cerri Feed & Pet Supply is a California limited liability company and, as such, is not a state, state official or other government entity exempt from CAFA.  (**Exhibit A**, Complaint at ¶ 8.)

**D.     There Is Diversity Between At Least One Class Member And Any One Defendant**

19.     CAFA's minimal diversity requirement is satisfied, inter alia, when "any member of a class of plaintiffs is a citizen of a State different from any defendant."     28 U.S.C. §§ 1332(d)(2)(A); 1453(b).    Minimal diversity of

---

[3]     Plaintiff alleges that the class is estimated to be greater than seventy-five (75) individuals and alleges that the identity of such membership is "readily ascertainable by inspection of Defendants' employment records."  (Ex. A, Complaint at ¶ 17(a).)

1  citizenship exists here because Plaintiff and Defendant Cargill, Incorporated are
2  citizens of different states.

3      20.    Plaintiff has conceded that she is domiciled in California.  Allegations
4  of residency in a state court complaint can create a rebuttable presumption of
5  domicile supporting diversity of citizenship.  *Lew v. Moss*, 797 F.2d 747, 751 (9th
6  Cir. 1986); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20
7  (10th Cir. 1994) (allegation by a party in state court complaint of residency
8  "created a presumption of continuing residence in [state] and put the burden of
9  coming forward with contrary evidence on the party seeking to prove otherwise").
10  At the time Plaintiff commenced this action and at the time of removal, Plaintiff
11  alleged that she resided in the State of California.  (**Exhibit A**, Complaint at ¶ 5.)
12  Therefore, Plaintiff is a citizen of California for diversity purposes.

13      21.    Conversely, Cargill, Incorporated is not a citizen of California.  It is a
14  citizen of Delaware and Minnesota.    For diversity purposes, a corporation is
15  deemed a citizen of its state of incorporation and the state where it has its
16  principal place of business.  28 U.S.C. § 1332(c)(1).   The principal place of
17  business is "where a corporation's officers direct, control, and coordinate the
18  corporation's activities."  See *Hertz Corp. v. Friend*, 130 U.S. 1181, 1192-93
19  (2010).  At the time this action was commenced in state court, Defendant Cargill,
20  Incorporated was, and remains, a Delaware corporation (via incorporation)
21  with its principal place of business in Wayzata, Minnesota where its corporate
22  offices and headquarters, and where Cargill, Incorporated's executive and
23  administrative functions are located.

24      22.    Accordingly, the named Plaintiff is a citizen of a state different from
25  Cargill, Incorporated, and diversity exists for purposes of CAFA jurisdiction. *See*
26  28 U.S.C. §§ 1332(d)(2)(A), 1453.

27  / / /
28  / / /

-8-

1      E.     **The Amount in Controversy Exceeds $5,000,000**[4]

2          23.    CAFA's $5,000,000 threshold for the "amount in controversy," is not

3   the same as the amount ultimately recovered.  *Lara v. Trimac Transp. Servs. Inc.*,

4   No. CV 10- 4280-GHK JCx, 2010 WL 3119366, at *3 (C.D. Cal. Aug. 6, 2010).

5   Rather, in assessing the amount in controversy, courts must "assume that the

6   allegations of the complaint are true and assume that a jury will return a verdict for

7   the plaintiff on all claims made in the complaint."  *Kenneth Rothschild Trust v.*

8   *Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002).  The

9   ultimate inquiry is what amount is put "in controversy" by the plaintiff's

10  complaint, not what a defendant will actually owe.  *Rippee v. Boston Market*

11  *Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005).  After all, "the amount in

12  controversy is simply an estimate of the total amount in dispute, not a prospective

13  assessment of defendant's liability."  *Lewis v. Verizon Communications, Inc.*, 627

14  F.3d 395, 400 (9th Cir. 2010) (citing *McPhail v. Deere & Co.*, 529 F.3d 947, 956

15  (10th Cir. 2008)).  Additionally, "the amount in controversy is not measured by the

16  low end of an open-ended claim, but rather by a reasonable reading of the value of

17  the rights being litigated"); *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th

18  Cir. 2004) (stating that "[t]he amount-in-controversy inquiry in the removal

19  context is not confined to the face of the complaint") (citations omitted).

20         24.    Congress intended federal jurisdiction to be appropriate under CAFA

21  "if the value of the matter in litigation exceeds $5,000,000 either from the

22  viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the

23  type of relief sought (e.g., damages, injunctive relief, or declaratory relief)."

---

[4]      The alleged damage calculations set forth in the instant Notice of Removal
are provided for purposes of removal only and based on the presumption of truth to
which Plaintiff's allegations are entitled.  Cargill, Incorporated denies that Plaintiff
or any putative class member is entitled to any relief whatsoever and expressly
reserves the right to challenge Plaintiff's claims and his alleged damages at every
stage of this case.

Senate Judiciary Committee Report, S. REP. 109-14 at 42.  In addition, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.  S. REP. 109-14 at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case . . . [Section 1332(d)] should be read broadly, with a strong preference that interstate class actions should be heard in federal court if removed by the defendant.")

25.    In calculating the amount in controversy, the claims of class members may be aggregated to determine whether the amount in controversy has been satisfied. 28 U.S.C. § 1332(d)(6).

26.    Plaintiff's Complaint here is silent as to the total amount in controversy.[5]  However, as demonstrated herein, the Plaintiff's allegations, when accepted as true, place more $5,000,000 in controversy in this lawsuit.  By demonstrating that the amount in controversy exceeds the CAFA threshold, Defendants in no way concede the validity of Plaintiffs claims in any respect or the likelihood that Plaintiff will obtain certification or recover anything.

27. With respect to her claims for wages, Plaintiff's Tenth Cause of Action alleges violation of the California Unfair Competition Law ("UCL"), Business and Professions Code § 17200, et seq.  (See **Exhibit A**, Complaint ¶¶ 110-116.) Alleging a UCL violation extends the statute of limitations on certain of Plaintiff's wage claims from three to four years.  See Cal. Bus. & Prof. Code § 17208; *Cortez v. Purolator Air Filtration Products Co.,* 23 Cal. 4th 163, 178-79 (2000) (four-year statute of limitations for restitution of wages under the

---

[5]    That Plaintiff concedes the value of his individual claims at less than $75,000 is irrelevant since the damages of the entire putative class are aggregated for purposes of calculating the amount in controversy.

UCL); *See also* **Exhibit A**, Complaint at ¶ 116 (specifically seeking to recover the restitution of wages during a four-year period preceding the filing of the instant lawsuit).   Moreover, Plaintiff explicitly seeks to apply a four-year statute of limitations to his class action claims by virtue of his class definition. (**Exhibit A**, Complaint at ¶ 15.)

### 1.   Plaintiff's First Cause of Action (Unpaid Overtime Wages)

28.   Plaintiff's first cause of action alleges that Defendants failed to pay overtime wages owed to Plaintiff and the other class members, including failing to properly calculate the overtime rate.  (**Exhibit A**, Complaint at ¶ 55.)

29.   Plaintiff's allegations with respect to his overtime claims do not adequately state the number of hours of overtime worked, the amount of overtime owed, or even whether the class members were denied the whole of the time-and-a-half their regular rate owed them or, instead, whether they were paid straight time for hours worked beyond eight in a day or forty in a week and therefore they are merely seeking the remaining half-time their regular rate.  (**Exhibit A**, Complaint at ¶¶ 54-57.)   For that reason, Defendants base their calculations on the lower of each possibility for purposes of determining the amount in controversy.

30.   Defendants' calculations are based on the following:

- During the class period starting with March 4, 2011 and proceeding to the present, Cargill, Incorporated employed an average of more than 300 hourly-paid non-exempt workers at any given time (300 positions) in the state.[6]

---

[6]   All of Cargill, Incorporated's calculations exclude individuals employed by Cerri after Cargill, Incorporated sold Cerri to a third party.  Moreover, Cargill, Incorporated does not waive its right to challenge the allegation that it employed Plaintiff or any other Cerri employees at any time or that any of its employees are similarly situated to any Cerri employee including Plaintiff.

- Those hourly-paid non-exempt employees were paid at least twice monthly[7] for a total of 208 (52 weeks per year x 4 years) workweeks per position and 96 pay periods (2 pay periods per month x 12 months per year x 4 years) per position.[8] Thus, the number of workweeks for purposes of calculating the amount in controversy for Plaintiff's first cause of action is at least 62,400 (208 x 300).

- Based on a review of a sampling of pay records across the 11 Cargill, Incorporated locations operating within the class period including pay records from March, 2011 to March, 2015, the average hourly rate of pay for class members is greater than Plaintiff's hourly rate of pay, which was $16.57. Thus, the pay rate for calculating the amount in controversy for Plaintiff's first cause of action is **at least** $8.28 per hour of overtime worked ($16.57 / 2).[9]

---

[7]    Some of the subject employees were paid weekly and some were paid twice monthly. However, for ease of calculation and explanation, Defendants' calculations are based on the less frequent pay method, thereby underestimating the potential amount in controversy any time damages are based on a per-paycheck method of calculation, such as with respect to Plaintiff's minimum wage claim.

[8]    Again for ease of calculation and explanation, Defendants' method of calculation relies on the four year period from March 4, 2011 to the date of filing on March 4, 2015. This method excludes the weeks following filing the Complaint and, by doing so, underestimates the potential amount in controversy by approximately 6 workweeks or at least 3 pay periods.

[9]    This rate takes the conservative interpretation of Plaintiff's calculations such that she is only seeking overtime at the rate of .5 times the regular hourly rate based on the understanding that she and the putative class members were paid straight time for their overtime hours worked. If her vague allegations are intended to claim that she and putative class members were not paid **at all** for their overtime hours worked (i.e., that they were the result of off-the-clock work), the amount in controversy for her first cause of action would increase at least threefold.

- In addition, based on that same review of pay records, employees in the putative class worked overtime in more than 50% of the workweeks in the class period. Thus, Defendant's calculations are based on this conservative 50% number.

- Additionally, based on that same review of pay records, during the class period putative class members averaged more than 3 hours of overtime in workweeks that they worked overtime. Thus, Defendants' calculations are based on this conservative 3-hour-per-workweek number.

31.   Accordingly, based on those conservative calculations for the putative class members, the amount in controversy for Plaintiff's first cause of action alone amounts to at least **$775,008.00**, which is reached by multiplying the number of workweeks for all class members (62,400) **x** the 50% overtime rate **x** 3 hours of overtime per workweek where overtime was worked **x** the overtime rate of $8.28 per hour (62,400 x .5 x 3 x 8.28 = 775,008.00).

**2.   <u>Plaintiff's Second Cause of Action (Unpaid Meal Premiums)</u>**

32.   With respect to her meal period claim, Plaintiff alleges without qualification that she and "other class members who were scheduled to work for a period of time in excess of six (6) hours were required to work for periods of longer than five (5) hours without an uninterrupted meal period of not less than thirty minutes . . ." (**Exhibit A**, Complaint at ¶ 62.).

33.   Based on a review of her pay records, Plaintiff's shift regularly exceeded six (6) hours. Moreover, based on a review of the pay records as set forth above, the shifts of the putative class members regularly exceeded six (6) hours per day. Indeed, the rate at which both Plaintiff and the putative class members worked shifts exceeding six (6) hours was greater than twice per workweek.

///

34. Thus, based on Plaintiff's allegation that she and the putative class members were denied legally-compliant meal periods when they worked more than six (6) hours in a shift, coupled with the frequency of which Plaintiff and the putative class members actually worked six or more hours in a workweek, the amount in controversy for Plaintiff's second cause of action for meal period premiums equals at least two meal period violation per week per class member.

35. The resulting amount in controversy is equal to **$2,067,936** based on the calculation of workweeks (62,400) **x** plaintiff's hourly rate (which, at $16.57, is less than the average hourly rate for the class) **x** 2 violations per week or 62,400 x 16.57 x 2 = 2,067,936.

### 3. Plaintiff's Third Cause of Action (Unpaid Rest Premiums)

36. With respect to her rest period claim, Plaintiff alleges without qualification that Defendants required her and other class members to work four or more hours without authorizing or permitting a ten (10) minute rest period per each four (4) hour period worked. (**Exhibit A**, Complaint at ¶ 71.).

37. Based on a review of her pay records, Plaintiff's shift and the shifts of the putative class members regularly exceeded four (4) hours per day. Indeed, the rate at which both Plaintiff and the putative class members worked shifts exceeding four (4) hours was greater than twice per workweek.

38. Thus, based on Plaintiff's allegation that she and the putative class members were denied legally-compliant rest periods when they worked more than four (4) hours in a shift, coupled with the frequency of which Plaintiff and the putative class members actually worked four or more hours in a workweek, the amount in controversy for Plaintiff's third cause of action for rest period premiums equals at least two rest period violations per week per class member.

39. The resulting amount in controversy is equal to **$2,067,936** based on the calculation of workweeks (62,400) **x** plaintiff's hourly rate (which, at $16.57, is less than the average hourly rate for the class) or 62,400 x 16.57 x 2 = 2,067,936.

4.    **Plaintiff's Fourth Cause of Action (Unpaid Minimum Wage)**

40.    With respect to her minimum wage claim, Plaintiff alleges that Defendant failed to pay minimum wage to Plaintiff and other class members.[10] (**Exhibit A**, Complaint at ¶ 78.)  Although Plaintiff's minimum wage allegations are simply too vague and inadequate to allow even for an estimation of the potential wages due as a result of Defendants' failure to pay minimum wage – after all, by how much does the amount Defendants pay fall below the minimum? – Plaintiff also seeks penalties with respect to those claims, which does lend itself to calculation.

41.    In that regard, Plaintiff is seeking at least $100 per pay period in which Defendants failed to pay minimum wage. (**Exhibit A**, Complaint at ¶ 80.)

42.    Thus, based on Plaintiff's broad minimum wage allegations coupled with the fact that she is seeking $100 per pay period, and based on the fact that penalties are limited to 1-year statutes of limitations under California law, Plaintiff is seeking $100 **x** the number of pay periods from March 4, 2014 to the present, which is more than 52 weeks.

43.    Over the course of the past year, Cargill, Inc. has employed workers in an average of 285 positions.  Using that number and limiting the recovery period to just one-year (which is at least 3 pay periods fewer than are at issue), there are 6,840 impacted pay periods (285 positions  **x** 24 pay periods per year).  Accordingly, the amount in controversy for Plaintiff's minimum wage claim,

---

[10]    While Plaintiff's minimum wage allegations are both inadequate under the applicable pleading standards and absurd based on her and other class members' hourly rates of pay, they must be accepted as true for purposes of calculating the amount in controversy. *See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002).  Defendants' calculations comply with that mandate, while Defendants do not waive their right to challenge Plaintiff's allegations at the pleadings stage and beyond.

excluding the wages and liquidated damages sought, is **at least $684,000** (6,840 pay periods x $100 penalty).

**5.    Plaintiff's Fifth Cause of Action (Final Wages Not Timely Paid)**

44.    With respect to her fifth cause of action for waiting time penalties Plaintiff alleges, without qualification, that Defendants intentionally and willfully failed to pay Plaintiff and the other class members who were no longer employed their wages within seventy-two (72) hours of termination.   Plaintiff seeks to recover each employee's wages, which continue to accrue for 30 days following their termination.

45.    Based on a review of Cargill, Incorporated's employment records, Cargill, Incorporated had more than 300 employees terminate their employment within the applicable class period.  Again using Plaintiff's hourly rate, which is less than the average hourly rate of pay for putative class members, as the applicable rate of pay, the amount in controversy for Plaintiff's waiting time claim is **$149,130** (16.57 (hourly rate) **x** 30 days **x** 300 employees = 149,130)

**6.    Plaintiff's Seventh Cause[11] of Action (Non-compliant Wage Statements)**

46.    With respect to her Non-compliant wage statement claims, Plaintiff alleges, without qualification, that Defendants failed to provide Plaintiff and the putative class members with complete and accurate wage statements.  (**Exhibit A**, Complaint at ¶ 96.)  In connection with that claim, Plaintiff seeks to recover **at least** $4,000 per effected employee.  (**Exhibit A**, Complaint at ¶ 99.)

---

[11]    Because Plaintiff does not specify what damages she seeks with respect to her sixth cause of action, either in the body of her Complaint or in her Prayer for Relief, Defendants will not endeavor to calculate an amount in controversy for that claim at this time.

47.    Over the one-year statute of limitations applicable to claims for wage statement penalties, Cargill, Inc. employed workers in 285 positions in the State of California.  Thus, at the conservative rate of 24 pay periods in a year, Cargill has issued at least 6,840 paychecks.  The available penalty under section 226 of the Labor Code is $50 per inaccurate statement for each initial violation and $100 per each subsequent violation.  Accordingly, even assuming that every violation is an initial violation, the amount in controversy for Plaintiff's inaccurate wage statement claim is **at least** $342,000.

### 7.    Minimum Amount in Controversy for Plaintiff's Claims

48.    Based on the foregoing, the amount in controversy for Plaintiff's claims exceeds the $5,000,000 threshold.  Specifically, the **minimum** amounts placed into controversy by Plaintiff's causes of action are:

- First cause of action = **$775,008**
- Second cause of action = **$2,067,936**
- Third cause of action = **$2,067,936**
- Fourth cause of action = **$684,000**
- Fifth cause of action = **$149,130**
- Seventh cause of action = **$342,000**

49.    Thus, the total **minimum** amount placed in controversy by Plaintiff's Complaint, even without any consideration given to causes of action six, eight, or nine, is **$6,086,010** before attorneys' fees are included.

### 8.    Attorney's Fees

50.    Attorneys' fees are also includable in the amount in controversy where the underlying statute authorizes an award of fees.  *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007) *overruled on other grounds by Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345 (2013).  Plaintiff is seeking attorneys' fees with respect to causes of action one, two, four, nine and ten.  (**Exhibit A**, Complaint at Prayer for Relief.)  The Ninth Circuit has recognized

25% as an appropriate benchmark for fee awards in class action cases.   *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).   Under that benchmark, and based on the demonstrated amount in controversy for causes action one, two, and four,[12] which is calculated by adding the amounts in controversy for each pertinent cause of action ($775,008 + $2,067,936 + $684,000 = $3,526,944) and then multiplying that number by .25 (25%) it is reasonable to place the attorneys' fees in controversy at a minimum of **$846,466.56**.   Adding that amount to the previously calculated value only serves to underscore the conclusion that this case easily exceeds the $5,000,000 threshold.

## V.   <u>CONCLUSION</u>

51.   This Court has original jurisdiction over Plaintiff's claims by virtue of the Class Action Fairness Act.   This action is thus properly removable to federal court pursuant to 28 U.S.C. § 1441.   In the event this Court has a question regarding the propriety of this Notice of Removal, Cargill, Incorporated requests the opportunity to submit evidence, points and authorities further supporting the removal of this action.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[12]   Plaintiff's tenth cause of action, for violation of the UCL, works to extend the recovery available under certain of her other causes of action.   For that reason, the amount in controversy for her tenth cause of action is already inherent in the amount in controversy for those other causes of action and, for that reason, is not double counted here in the fee calculation or above in the amount in controversy calculations.

1        WHEREFORE, Defendant Cargill, Incorporated removes the above-action

2    to this Court.

3                        **DEMAND FOR JURY TRIAL**

4        Defendants hereby demand a trial by jury.

5

6    Dated: April 16, 2015                    By: _____

7                                       One of the Attorneys for Defendants

8                                      Jason E. Barsanti (CA Bar No. 235807)

9                                      Jason.barsanti@mbtlaw.com

10                                     MECKLER BULGER TILSON

11                                     MARICK & PEARSON LLP

12                                     575 Market Street, Suite 2200

                                San Francisco, CA 94105

13                                     Tel: (415) 644-0914

14                                     Fax: (415) 644-0978

15                                     Michelle Lee Flores (CA Bar No. 166737)

16                                     mflores@cozen.com

17                                     COZEN O'CONNOR

18                                     601 S. Figueroa Street, Suite 3700

                                Los Angeles, CA 90017

19                                     Tel: (213) 892-7900

20                                     Fax: (213) 902-906

21

22

23

24

25

26

27

28