Edwin Aiwazian (Cal. State Bar No. 232943)
*edwin@lfjpc.com*
Arby Aiwazian (Cal. State Bar No. 269827)
*arby@lfjpc.com*
Jill J. Parker (Cal. State Bar No. 274230)
*jill@lfjpc.com*
**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203
Telephone:   (818) 265-1020
Facsimile:    (818) 265-1021
*Attorneys for* Plaintiff Joan Wilkins

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAN WILKINS; individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CARGILL, INCORPORATED, an unknown business entity; CARGILL ANIMAL NUTRITION, an unknown business entity; CERRI FEED & PET SUPPLY, LLC, a California limited liability company; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 2:15-cv-02818-ODW-JEM<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Honorable Otis D. Wright, II<br><br>Date:        June 8, 2015<br>Time:        1:30 p.m.<br>Courtroom:   11<br><br>Complaint Filed:   March 4, 2015 |

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1   **PLEASE TAKE NOTICE** that on **June 8, 2015** at **1:30 p.m.**, or as soon

2   thereafter as may be heard in Courtroom 11 of the United States Courthouse,

3   located at 312 North Spring Street, Los Angeles, California 90012, Plaintiff Joan

4   Wilkins ("Plaintiff") will and hereby does move for an order remanding this action

5   to the Los Angeles County Superior Court.

6       Plaintiff moves for remand pursuant to 28 U.S.C. § 1447 on the ground that

7   this Court does not have removal jurisdiction over this case.  Defendants Cargill,

8   Inc. and Cargill Animal Nutrition ("Defendants") improvidently removed this

9   action from state court without the ability to prove by a preponderance of the

10  evidence that the total amount in controversy exceeds the sum of $5,000,000 as

11  required for jurisdiction under the Class Action Fairness Act of 2005, codified at

12  28 U.S.C. § 1332(d) ("CAFA") and that the requisite diversity of citizenship exists.

13  As a result, Plaintiff seeks remand to the Superior Court for the County of Los

14  Angeles, where this case was originally filed and where it rightfully belongs.

15      This motion is made following Counsel for Plaintiff's meeting and

16  conferring with Counsel for Defendants pursuant to Local Rule 7-3, which took

17  place on April 20, 2015 and April 23, 2015.

18      Plaintiff's Motion is based on this Notice, the Memorandum of Points and

19  Authorities, the Declaration of Jill J. Parker, any documents Plaintiff may

20  subsequently file, all other pleadings and papers on file in this action, and any oral

21  argument or other matter that may be considered by the Court.

22  Dated:  April 30, 2015                      **LAWYERS *for* JUSTICE, PC**

23

24                                     By: _____

25                                         Jill J. Parker
                                           *Attorneys for* Plaintiff

26

27

28

---

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# **TABLE OF CONTENTS**

I.     INTRODUCTION ....................................................................................... 1

II.     STATEMENT OF FACTS ........................................................................ 1

III.    LEGAL STANDARD ................................................................................ 3

      A.     The Ninth Circuit Requires a Removing Party to Demonstrate Removal Jurisdiction by a Preponderance Standard ............................ 3

      B.     Only the Complaint and Summary Judgment Type Evidence May be Used to Prove the Amount in Controversy .................................. 3

IV.    ARGUMENT ............................................................................................. 4

      A.     Defendants Did Not Demonstrate Diversity of Citizenship ................ 4

      B.     Defendants Did Not Provide Competent Evidence of the Number of Class Members, Number of Workweeks, and Hourly Rate of Pay ................................................................................ 5

      C.     Defendants Provide No Evidence Whatsoever to Support Their Overtime Calculations ......................................................................... 7

      D.     Defendants' Meal and Rest Break Premium Calculations are Unsupported As Well ............................................................................ 9

      E.     Defendants' Calculations for Wage Statement Penalties and Unpaid Minimum Wages are Inflated and Unsupported .................... 12

      F.     Defendants' Calculations of Waiting Time Penalties are Similarly Inflated and Unsupported ..................................................... 13

      G.     Defendants' Attorneys' Fees Estimate is Unsupported ...................... 15

V.     CONCLUSION ........................................................................................ 16

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

i

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Medical Staffing Network Healthcare, LLC,* 2013 U.S. Dist. LEXIS 172483 (E.D. Cal. Dec. 5, 2013)...........................................................15

*Amoche v. Guarantee Trust Life Insurance Company,* 556 F.3d 41 (1st Cir. 2009)..................................................................................................9

*Brinker v. Superior Court,* 53 Cal. 4th 1004 (2012)....................................11

*Cavazos v. Heartland Auto. Servs.,* 2014 U.S. Dist. LEXIS 132755 (C.D. Cal. Sept. 19, 2014)............................................................................................15

*Conrad Associates v. Hartford Accident & Indemnity Co.,* 994 F. Supp. 1196 (N.D. Cal. Feb. 10, 1998).........................................................................4, 16

*Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S. Ct. 547 (2014).........3

*Duncan v. Stuetzle,* 76 F.3d 1480 (9th Cir. 1996)........................................3

*Dupre v. GM,* 2010 U.S. Dist. LEXIS 95049 (C.D. Cal. Aug. 27, 2010)............14

*Ellis v. Pac. Bell Tel. Co.,* 2011 U.S. Dist. LEXIS 16045 (C.D. Cal. Feb. 10, 2011)...................................................................................................4

*Emmons v. Quest Diagnostics Clinical Labs., Inc.,* 2014 U.S. Dist. LEXIS 18024 (E.D. Cal. Feb. 11, 2014)...........................................................................15

*Evans v. Walter Indus., Inc.,* 449 F.3d 1159 (11th Cir. 2006).........................9

*Gallegos v. Comerica,* 2011 U.S. Dist. LEXIS 82735 (C.D. Cal. Jul. 27, 2011)...16

*Garibay v. Archstone Communities, LLC,* 539 Fed. Appx. 763 (9th Cir. 2013)..................................................................................11, 15, 16

*Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992)..................................3

*Hertz Corp. v. Friend,* 130 U.S. 1181 (2010)...............................................4

*Ibarra v. Manheim Invs., Inc.,* 775 F.3d 1193 (9th Cir. 2015).............3, 4, 10, 11

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

ii

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Longmire v. HMS Host USA, Inc.*, 2012 U.S. Dist. LEXIS 167463 (S.D. Cal. Nov. 26, 2012)...................................................................................14

*Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994 (9th Cir. 2007)...13, 14, 15, 16

*Marshall v. G2 Secure Staff, LLC*, 2014 U.S. Dist. LEXIS 95620 (C.D. Cal. July 14, 2014)...................................................................................15

*Nolan v. Kayo Oil Co.*, 2011 U.S Dist. LEXIS 72256 (N.D. Cal. Jul. 6, 2011)......8

*Ray v. Nordstrom, Inc.*, 2011 U.S. Dist. LEXIS 146657 (C.D. Cal. Dec. 9, 2011)..................................................................................8, 11

*Rhoades v. Progressive Casualty Insurance Co.*, 2010 U.S. Dist. LEXIS 111026 (E.D. Cal. Oct. 7, 2010).........................................................................15

*Rodriguez v. AT&T Mobility Servs. LLC*, 728 F. 3d 975 (9th Cir. 2013)..............3

*Roth v. Comerica Bank*, 799 F. Supp. 2d 1107 (C.D. Cal. Aug. 31, 2010)...........9

*Ruby v. State Farm Gen. Ins. Co.*, 2010 U.S. Dist. LEXIS 88812 (N.D. Cal. Aug. 4, 2010)..................................................................................11-12

*Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398 (9th Cir. 1996)...................3

*Scalzo v. Allied Property and Casualty Insurance Co.*, 2011 U.S. Dist. LEXIS 75721 (E.D. Cal. Jul. 11, 2011)...............................................................16

*Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373 (9th Cir. 1997)..............4

*Vigil v. HMS Host USA, Inc.*, 2012 U.S. Dist. LEXIS 112928 (N.D. Cal. Aug. 10, 2012)..................................................................................8

*Weston v. Helmerich & Payne Int'l Drilling Co.*, 2013 U.S. Dist. LEXIS 132930 (E.D. Cal. Sep. 16, 2013)....................................................................11, 15

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

iii

**Statutes**

28 U.S.C. § 1332(c)(1) ...............................................................4

28 U.S.C. § 1332(d)(2)(A)..........................................................4

28 U.S.C. § 1441.......................................................................3

Cal. Lab. Code § 201..................................................................2

Cal. Lab. Code § 202..................................................................2

Cal. Lab. Code § 204..................................................................2

Cal. Lab. Code § 226(a) .............................................................2

Cal. Lab. Code § 226.7...............................................................2

Cal. Lab. Code § 510..................................................................1

Cal. Lab. Code § 512(a)..............................................................2

Cal. Lab. Code § 1174(d)............................................................2

Cal. Lab. Code § 1194................................................................2

Cal. Lab. Code § 1197................................................................2

Cal. Lab. Code § 1197.1.............................................................2

Cal. Lab. Code § 1198................................................................1

Cal. Lab. Code § 2800................................................................2

Cal. Lab. Code § 2802................................................................2

Cal. Bus. & Prof. Code § 17200...................................................2

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendants Cargill, Inc. and Cargill Animal Nutrition's ("Defendants") removal is devoid of factual support.  Despite having purportedly referenced employment records for the putative class, Defendants fail to demonstrate that their amount in controversy calculations are based on reasonable assumptions. Without any evidence that their estimates are reasonable, Defendants estimate that all putative class members worked three hours of overtime in fifty percent of workweeks.  Defendants further speculate that putative class members missed two meal breaks and two rest breaks each week.  Plaintiff Joan Wilkins' ("Plaintiff") Complaint does not support these assumptions, and Defendants do not provide a single document in support of these assumptions.  Defendants' estimates regarding the amount in controversy for waiting time penalties, unpaid minimum wages, wage statement penalties, and attorneys' fees are similarly unsupported.  The Ninth Circuit Court of Appeals has made it clear that, in a removal jurisdictional dispute, a removing party must support all assertions about the amount in controversy with summary judgment type evidence.  In contrast, Defendants' calculations rely on conjecture.  As such, Defendants have failed to meet their burden to establish that the amount in controversy requirement is satisfied.  Moreover, Defendant has failed to demonstrate the requisite diversity of citizenship for removal jurisdiction.  As Defendants have failed to prove that the amount in controversy exceeds $5,000,000, and the existence of minimum diversity, Plaintiff respectfully requests that this Court remand this case to the Los Angeles Superior Court.

## II.  STATEMENT OF FACTS

Plaintiff filed this action on March 4, 2015 in the Superior Court for the County of Los Angeles.  Plaintiff's Complaint contains ten causes of action for (1) violation of California Labor Code §§ 510 and 1198 (unpaid overtime); (2)

1

violation of California Labor Code §§ 226.7 and 512(a) (unpaid meal period premiums); (3) violation of California Labor Code § 226.7 (unpaid rest period premiums); (4) violation of California Labor Code §§ 1194, 1197, and 1197.1 (unpaid minimum wages); (5) violation of California Labor Code §§ 201 and 202 (final wages not timely paid); (6) violation of California Labor Code § 204 (wages not timely paid during employment); (7) violation of California Labor Code § 226(a) (non-compliant wage statements); (8) violation of California Labor Code § 1174(d) (failure to keep requisite payroll records); (9) violation of California Labor Code §§ 2800 and 2802 (unreimbursed business expenses); and (10) violation of California Business & Professions Code §§ 17200, et seq.

Plaintiff seeks to certify the following class:

All current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment.

(Dkt. No. 1-1, Exh. A, Complaint, ¶ 15.)

On April 16, 2015, Defendants filed a Notice of Removal (Dkt. No. 1). Relying exclusively on unsubstantiated assumptions, Defendants contend that the amount in controversy and minimum diversity requirements are met. On April 20, 2015, Plaintiff's counsel sent a meet and confer letter to Defendants' counsel regarding the deficiencies in their Notice of Removal. (Declaration of Jill J. Parker ["Parker Decl."], ¶ 2, Exh. A.) Plaintiff's counsel requested a response by April 27, 2015. (*Id.*) On April 23, 2015, Plaintiff's counsel met and conferred telephonically with counsel for Defendants. (Parker Decl., ¶ 3.) After discussing the merits of Defendants' Notice of Removal, Defendants' counsel stated that Defendants would not agree to a remand of this action to state court. (*Id.*) As a result, this motion to remand was necessary.

///

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

## III. LEGAL STANDARD

### A.    The Ninth Circuit Requires a Removing Party to Demonstrate Removal Jurisdiction by a Preponderance Standard

A federal court may exercise removal jurisdiction over a case only if jurisdiction existed over the suit as originally brought by the plaintiffs. 28 U.S.C. § 1441. "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992); *see also Duncan v. Stuetzle,* 76 F.3d 1480, 1485 (9th Cir. 1996) (same).

"Evidence establishing the amount [in controversy] is required where, as here," Defendant's "assertion of the amount in controversy is contested by" Plaintiff. *Ibarra v. Manheim Invs., Inc.,* 775 F.3d 1193, 1197 (9th Cir. 2015) (citing *Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S. Ct. 547, 554 (2014)). Defendant bears the burden of proving the propriety of federal court jurisdiction by "a preponderance of the evidence." *Rodriguez v. AT&T Mobility Servs. LLC,* 728 F. 3d 975, 977 (9th Cir. 2013). Under this burden, a defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." *Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 404 (9th Cir. 1996). In a removal jurisdictional dispute, the defendant has not only "the burden to put forward evidence showing that the amount in controversy exceeds $5 million," but also the burden "to persuade the court that the estimate of damages in controversy is a reasonable one." *Ibarra.,* 775 F.3d at 1197. Thus, a removing party "cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.*

### B.    Only the Complaint and Summary Judgment Type Evidence May be Used to Prove the Amount in Controversy

In attempting to satisfy its burden, a defendant must offer nothing less than competent evidence. *Gaus,* 980 F.2d at 567. In order to demonstrate the requisite amount in controversy, parties may submit "summary-judgment-type evidence"

1   relevant to the amount in controversy at the time of removal." *Singer v. State*

2   *Farm Mut. Auto. Ins. Co.,* 116 F.3d 373, 377 (9th Cir. 1997).  A defendant "may

3   rely on calculations to satisfy [its] burden so long as [its] calculations are good

4   faith, reliable estimates based on the pleadings and other evidence in the record."

5   *Ellis v. Pac. Bell Tel. Co.,* 2011 U.S. Dist. LEXIS 16045, *5 (C.D. Cal. Feb. 10,

6   2011).  It is well-settled in the Ninth Circuit that "[a] speculative argument

7   regarding the potential value of the [amount in controversy] is insufficient." *Mix,*

8   2000 U.S. Dist. LEXIS 14260, *3 (quoting *Conrad Associates v. Hartford*

9   *Accident & Indemnity Co.,* 994 F. Supp. 1196, 1198 (N.D. Cal. Feb. 10, 1998));

10  *see also Ibarra,* 775 F.3d at 1197 (A defendant "cannot establish removal

11  jurisdiction by mere speculation and conjecture, with unreasonable assumptions.")

## IV. ARGUMENT

### A.   Defendants Did Not Demonstrate Diversity of Citizenship

14      A district court may exercise removal jurisdiction over a class action if

15  there is minimum diversity in that "any member of a class of plaintiffs is a citizen

16  of a State different from any defendant."  28 U.S.C. §§ 1332(d)(2)(A).  For the

17  purpose of diversity jurisdiction, a corporation is deemed a citizen of its state of

18  incorporation and the state where it has its principal place of business.  28 U.S.C.

19  § 1332(c)(1).  A corporation's principal place of business is where "officers

20  direct, control, and coordinate the corporation's activities."  *Hertz Corp. v.*

21  *Friend,* 130 U.S. 1181, 1192-93 (2010).

22      Defendants fail to provide any documentation which would demonstrate

23  their[1] citizenship.  Defendants simply state that "Cargill, Incorporated is not a

24  citizen of California . . . [i]t is a citizen of Delaware and Minnesota."  (Dkt. No.

25  1, ¶ 21).  In support of this representation, Defendants state that "Defendant

26  Cargill, Incorporated was, and remains, a Delaware corporation (via

27  ────────────────────

[1] Defendants represent that "Defendant Cargill Animal Nutrition is not a separate
28  corporate entity of any nature, but instead is a business unit of Defendant Cargill,
Incorporated." (Dkt. No. 1, fn 1).

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1  incorporation) with its principal place of business in Wayzata, Minnesota where

2  its corporate offices and headquarters, and where Cargill, Incorporated's

3  executive and administrative functions are located." (Dkt. No. 1, ¶ 21).

4  Defendant does not meet its burden of proving that minimum diversity exists with

5  these unsupported assertions. First, Defendants have not shown that Defendant

6  Cargill Animal Nutrition is, in fact, a unit that falls under Defendant Cargill,

7  Inc.'s corporate structure. Moreover, Defendant Cargill, Inc. did not provide any

8  evidence of its state of incorporation. Defendants simply expect the Court and

9  Plaintiff to take their word as true. Finally, Defendant Cargill, Inc. has not

10 demonstrated or even properly alleged that it has its principal place of business in

11 Minnesota. Stating that Minnesota is where "corporate offices," "headquarters,"

12 and "executive and administrative functions" are located does not necessarily

13 equate to stating that Cargill's "officers direct, control, and coordinate the

14 corporation's activities" from a location within the state of Minnesota.

15 Therefore, Defendants have failed to demonstrate the requisite diversity for

16 removal jurisdiction.

17  **B.**    **Defendants Did Not Provide Competent Evidence of the Number**

18         **of Class Members, Number of Workweeks, and Hourly Rate of**

19         **Pay**

20         Defendants assert, without providing a single supporting business record,

21 spreadsheet, or other document, that the number of putative class members is "an

22 average of more than 300 hourly-paid non-exempt workers at any given time (300

23 positions) in the state." (Dkt. No. 1, ¶ 30). Defendants do not so much as submit a

24 declaration to support this figure. Defendants continue to cite unsubstantiated

25 figures in their calculations for the amount in controversy. For example, as to

26 Plaintiff's fourth cause of action for unpaid minimum wages, Defendants merely

27 state that "[o]ver the course of the past year, Cargill, Inc. has employed workers in

28 an average of 285 positions." (Dkt. No. 1, ¶ 43). With respect to Plaintiff's fifth

1    cause of action for the untimely payment of final wages, Defendants represent that,

2    "[b]ased on a review of Cargill, Incorporated's employment records, Cargill,

3    Incorporated had more than 300 employees terminate their employment within the

4    applicable class period." (Dkt. No. 1, ¶ 45).  Furthermore, in addressing Plaintiff's

5    seventh cause of action for non-compliant wage statements, Defendant claims that,

6    "[o]ver the one-year statute of limitations applicable to claims for wage statement

7    penalties, Cargill, Inc. employed workers in 285 positions in the State of

8    California." (Dkt. No. 1, ¶ 47).  Without providing evidentiary support for these

9    figures, which only Defendants have access to, it is impossible to assess whether

10   these figures are accurate.  Moreover, the use of the words "an average of more

11   than" and "more than" indicates that Defendants failed to calculate the precise

12   number of employees for the relevant time frames, and has instead presented the

13   Court with unexplained estimates that are not accurate.

14      With respect to putative class members, Defendants conduct their

15   calculations for the amount in controversy using "a total of 208 (52 weeks per year

16   x 4 years) workweeks per position" multiplied by the number of class members to

17   arrive at 62,400 workweeks. (*See* Dkt. No. 1, ¶¶ 30, 35, 39).  Implicit in this

18   calculation are the assumptions that class members (i) worked full weeks (ii) year-

19   round, including holidays.  Yet, Defendants did not provide documentary evidence

20   of the number of workweeks relied upon for their calculations.  The Court could

21   certainly take judicial notice of the fact that there are 52 weeks in a year, but this

22   fact does not speak to whether putative class members actually worked full weeks

23   every single week in the last four years.  As such, Defendants have not provided

24   competent evidence of the number of workweeks.

25      Moreover, Defendants state that "the average hourly rate of pay for class

26   members is greater than Plaintiff's hourly rate of pay, which was $16.57."[2] (Dkt.

27   No. 1, ¶ 30).  However, in Defendants' Answer, Defendants denied that they

28

[2]

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1   employed Plaintiff.  (Dkt. No. 7, ¶ 9).  If the Court accepts Defendants' denial,

2   then it becomes questionable how Defendants knew of Plaintiff's hourly rate of

3   pay.  The referenced rate of pay may simply be conjecture.

4       Defendants' failure to provide competent evidence is particularly

5   inexcusable since Defendants, as employers, have ready access to all the facts,

6   records, and information necessary to make a showing on the issues.  The evidence

7   that Defendants could provide, but chose not to, is the kind of information

8   available to Defendants through payroll records which they are statutorily required

9   to maintain.   However, Defendants provided none of this information, which

10  leaves Plaintiff and the Court in the troubling position of simply presuming that all

11  of the information they have provided is complete and accurately calculated.  This

12  is especially disconcerting in light of the fact that Plaintiff's Complaint alleges that

13  Defendant failed to properly maintain accurate payroll records in violation of

14  California Labor Code § 1174(d). (Dkt. No. 1-1, ¶¶ 101-105).

15      Because Defendants fail to lay the necessary foundation for the figures they

16  rely upon, and because they fail to attach any underlying business records

17  evidencing such figures, Defendants have not put forth summary judgment type

18  evidence upon which it can base their amount in controversy calculations.

19  On this ground alone, all of Defendant's calculations should be disregarded.

**C.   Defendants Provide No Evidence Whatsoever to Support Their Overtime Calculations**

22      Defendants state that, based on a "review of pay records, employees in the

23  putative class worked overtime in more than 50% of the workweeks in the class

24  period," and "putative class members averaged more than 3 hours of overtime in

25  workweeks that they worked overtime."   (Dkt. No. 1, ¶ 30).   Based on this,

26  Defendants calculate the amount in controversy for unpaid overtime by assuming

27  three hours of unpaid overtime for 50% of all weeks during the proposed class

28  period. Again, Defendants allegedly relied on the employment records they

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

7

1   maintained, yet Defendants fail to put forth any evidence – such as work schedules
2   or time cards – in support of the number of overtime hours worked by putative
3   class members.  If Defendants did, in fact, review pay records in order to find an
4   estimate of the number of overtime hours worked, then Defendants should be able
5   to demonstrate the amount in controversy as to unpaid overtime.    However,
6   without more, Defendants' calculations are too speculative to support removal
7   jurisdiction.

8       Courts in similar circumstances have found that even a one hour estimate of
9   overtime hours worked per week was too speculative when not supported by any
10  evidence. *See e.g.,  Ray v. Nordstrom, Inc.*, 2011 U.S. Dist. LEXIS 146657, at *8
11  (C.D. Cal. Dec. 9, 2011) (allegation that defendant "failed to pay 'all' California
12  hourly employees at least some regular and overtime hours' did not support
13  defendant's estimate that each class member missed one hour of regular pay and
14  one hour of overtime pay per pay period); *Nolan v. Kayo Oil Co.*, 2011 U.S Dist.
15  LEXIS 72256, at   12 (N.D. Cal. Jul. 6, 2011) ("Simply assuming that every
16  employee…worked at least one hour of overtime a week, without some facts or
17  evidence to support these assumptions, is insufficient to meet Defendant's
18  evidentiary burden [by a preponderance of the evidence]."); *Vigil v. HMS Host*
19  *USA, Inc.*, 2012 U.S. Dist. LEXIS 112928, at * 15-16 (N.D. Cal. Aug. 10, 2012)
20  (defendant's assumption that each class member worked one hour of overtime per
21  week was unsupported by evidence and unsupported by allegations in complaint);
22  *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1125 (C.D. Cal. Aug. 31, 2010)
23  (allegations that class members did not take timely, uninterrupted meal periods and
24  were not always given proper rest breaks did not support assumption that class
25  members missed 1-3 meal and rest breaks per week).    Here too, Defendants'
26  overtime estimates are far too speculative to rise to the level of summary judgment
27  type evidence.

28       Again, Defendants, as employers, have access to employee records and other

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1   documents which would bear on whether Defendants' estimates are in fact reliable

2   estimates of the amount in controversy.[3]   Defendants' failure to introduce these

3   documents, which they purport to have relied on, is likely a calculated strategy to

4   invoke CAFA jurisdiction without providing any admissible evidence regarding

5   the putative class members' claims – evidence that could later be used to expose

6   Defendants' liability in this case.

7       **D.    Defendants' Meal and Rest Break Premium Calculations are**

8           **Unsupported As Well**

9           Defendants' calculation of the amounts in controversy for meal and rest

10   break premiums are not supported by any evidence.  Defendants assume that all

11   putative class members experienced at least two meal period violations and at least

12   two rest period violation every week.  (Dkt. No. 1, ¶¶ 34, 38).  But Defendants do

13   not provide a single timecard, paystub, wage statement, work schedule or other

14   employee document to support the propriety of their meal and rest break violation

15   rates.  Nor do Defendants provide a sound rationale for why it is reasonable to

16   assume that meal and rest break violations occur with this frequency.  Defendants

17   merely state that "the rate at which both Plaintiff and the putative class members

18   worked shifts exceeding six (6) hours was greater than twice per workweek," and

19   "the rate at which both Plaintiff and the putative class members worked shifts

20   exceeding four (4) hours was greater than twice per workweek."  (Dkt. No. 1, 33,

21

22   [3] California Labor Code §§ 226, 432, 433, and 1198.5 require that a California

23   employer retain copies of employee itemized wage statements, attendance records,
     performance evaluations, and documents relating to the obtaining or holding of

24   employment.  In ruling on motions to remand, the Court should consider "which
     party has better access to the relevant information."  *Amoche v. Guarantee Trust*

25   *Life Insurance Company*, 556 F.3d 41 (1st Cir. 2009); *see also Evans v. Walter*

26   *Indus., Inc.*, 449 F.3d 1159, 1164, n. 3 (11th Cir. 2006) ("Defendants have better
     access to information about conduct by the defendants, but plaintiffs have better

27   access to  information about which plaintiffs are injured and their relations to

28   various defendants.")

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

9

37). Defendants provide no basis for the 100% violation rate used in their calculations, and Plaintiff has never alleged that Defendants failed to provide meal and rest breaks for every shift that required any such break.

The unreasonableness of Defendants' assumptions in their amount in controversy calculations is evident in light of *Ibarra*. There, the plaintiff alleged that the defendant engaged in a "pattern and practice of failing to pay" non-exempt employees for working off-the-clock and therefore sought to recover premium pay for missed meal and rest breaks for putative class members. *Ibarra,* 775 F.3d at 1198. In estimating the amount in controversy, the defendant assumed "that each class member missed one meal break in a 5-hour shift and that each class member missed one rest break in a 3.5-hour shift." *Id.* While the Court noted that the defendant relied on the declaration of its senior director of employee services and administration to support its assumption about the number of employees, the Court found that the defendant's assumption that meal and rest break violations occurred on every break eligible and rest break eligible shift was not a reasonable assumption. *Id.* at 1199. The Court reasoned that, while "a damages assessment may require a chain of reasoning that includes assumptions, [...] those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Id.* The Court highlighted the fact that "[t]he complaint alleges a 'pattern and practice' of labor law violations but does not allege that this 'pattern and practice' is universally followed every time the wage and hour violation could arise." *Id.* The Court articulated that a "'pattern and practice' of doing something does not necessarily mean *always* doing something." *Id.* at 1198-99 (emphasis in original).

Likewise, Defendants' assumptions that meal period violations occurred every day class members worked shifts exceeding six hours, and rest break violations occurred every day that class members worked shifts exceeding four hours, are unreasonable assumptions because they are not based on any grounds. While Plaintiff alleges a "uniform policy and systematic scheme of wage abuse,"

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1   there is no allegation or indication that meal and rest break violations occurred

2   every day they could. (Dkt. No. 1-1, ¶ 27). Thus, Defendants' representations as

3   to the amounts in controversy for meal period and rest break premium pay are pure

4   speculation.

5       Additionally, Defendants do not state that these missed meal or rest breaks

6   occurred because Defendants failed to *provide* meal and rest breaks. Employers

7   are only required to provide breaks, and not ensure they are taken. *Brinker v.*

8   *Superior Court*, 53 Cal. 4th 1004, 1040-41 (2012). Thus, for example, if an

9   employee is offered a meal break, but declines to take it, that employee is not

10  entitled to a meal period premium. *See id.* For this additional reason, Defendants'

11  meal and rest period calculations are too conjectural.

12      While Defendants argue that their estimates of meal and rest period violation

13  rates are conservative, courts disagree. *See, e.g., Weston v. Helmerich & Payne*

14  *Int'l Drilling Co.*, 2013 U.S. Dist. LEXIS 132930, at *17 (E.D. Cal. Sep. 16, 2013)

15  ("...Defendant provides no factual underpinning for the assumption that a meal

16  and rest break violation occurred one time per week..."); *Nordstrom*, 2011 U.S.

17  Dist. LEXIS 146657, at *9 (rejecting employer's assumption that each class

18  member missed one meal period and one rest period each pay period); *Ruby v.*

19  *State Farm Gen. Ins. Co.*, 2010 U.S. Dist. LEXIS 88812, at *11-12 (N.D. Cal.

20  Aug. 4, 2010) (rejecting defendant's estimate of one missed meal break and one

21  missed rest break per workweek because there was no basis for making this

22  assumption based on the complaint's allegations). Here too, the Court should

23  reject Defendants' estimates of the amount in controversy for missed meal and rest

24  breaks because they are unsupported by the allegations in the Complaint and

25  because Defendant has failed to introduce summary judgment type evidence

26  supporting them.

27      Furthermore, the Court should note that, while "Defendants' method of

28  calculation relies on the four year period from March 4, 2011 to the date of filing

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

11

1  on March 4, 2015" Defendants have also pled in their Answer's first affirmative

2  defense that "Plaintiff and putative class members are barred from recovering [...]

3  premium payments for missed meal and/or rest periods or other statutory claims

4  prior to March 4, 2012." (Dkt. No. 1, fn 8); (Dkt. No. 7, 39:28-40:5). Defendants'

5  inconsistent representations to the Court undermine their amount in controversy

6  calculations.   As Defendants themselves are uncertain as to which limitations

7  period might apply, Defendants cannot meet their burden by a preponderance

8  standard.

9     **E.**   **Defendants' Calculations for Wage Statement Penalties and**

10         **Unpaid Minimum Wages are Inflated and Unsupported**

11        Defendants' wage statement penalty calculations also improperly assume a

12  100% violation rate.   Defendants state that, "[o]ver the one-year statute of

13  limitations applicable to claims for wage statement penalties, Cargill, Inc. . . .

14  issued at least 6,840 paychecks." (Dkt. No. 1, ¶ 41). Defendants then proceed by

15  calculating penalties for every single wage statement issued to class members

16  during the statutory period.   However, nowhere in the Complaint does Plaintiff

17  allege that every single wage statement provided to her and the putative class

18  members was deficient. Rather, the Complaint alleges Defendants failed to include

19  the total number of hours worked by Plaintiff and the other class members. (Dkt.

20  No. 1-1, ¶ 96).   While it could be appropriate to assume maximum penalties if

21  there were evidence that every single wage statement was deficient in some

22  manner (e.g., missing an employee's social security number or employee

23  identification number), this is not the case here.   Defendants do not produce any

24  evidence suggesting that every single wage statement for every class member

25  failed to state the total number of hours worked.   As a result, Defendants' wage

26  statement penalty calculations should be disregarded.

27        Likewise, Defendants' calculation of the amount in controversy for unpaid

28  minimum wages is inflated and unsupported.   Plaintiff and class members seek "a

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  penalty of $100.00 for the initial failure to timely pay each employee minimum

2  wages, and $250.00 for each subsequent failure to pay each employee minimum

3  wages." (Dkt. No. 1-1, ¶ 80).  Nowhere in the Complaint does Plaintiff allege that

4  she and class members were missing compensation for hours worked in every

5  single pay period and thus that the aforementioned penalties should be factored

6  into every pay period.  As such, Defendants' factoring in of penalties for each

7  putative class member and in each pay period is not based on any reasonable

8  ground.

9      **F.**     **<u>Defendants' Calculations of Waiting Time Penalties are Similarly</u>**

10               **<u>Inflated and Unsupported</u>**

11        Defendants assert that Cargill, Inc. "had more than 300 employees terminate

12  their employment within the applicable class period." (Dkt. No. 1, ¶ 45).  Without

13  justification for doing so, Defendants go on to calculate the maximum thirty days

14  of waiting time penalties for each of these individuals.  The Court should not rely

15  on Defendants' maximum penalty calculation without competent evidence that the

16  putative class members could be entitled to those penalties.

17        The maximum penalties approach to waiting time penalties was rejected by

18  the Ninth Circuit in *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994 (9th Cir.

19  2007) (overruled on other grounds) and again in *Garibay v. Archstone*

20  *Communities, LLC*, 539 Fed. Appx. 763 (9th Cir. 2013).  In *Lowdermilk*, Oregon

21  law permitted employees to recover a maximum of thirty days in penalty wages for

22  an employer's failure to timely pay wages upon termination. *Lowdermilk*, 479

23  F.3d at 1000.  The defendant merely "examined company records and determined

24  that 7,571 employees left [its] employment during the period specific in the

25  complaint.  It then assumed that [the defendant] waited at least 30 days after

26  termination to tender employees their final pay check, which would entitle each

27  plaintiff to the maximum recovery." *Id.* at 1001.  Although the defendant provided

28  the declaration of one human resources employee to support its assumption about

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1  the number of employees, the Court found that the defendant failed to meet its

2  substantial burden of proof.  *Id.*  The Court reasoned:

> 3  Defendant assumes that all class members would be entitled to the
> 4  maximum damages . . . but provides no evidence to support this
> 5  assertion . . . . Many employees may have been paid only a few days
> 6  late and, consequently, would be entitled to fewer days of penalty
> 7  wages. . . . Again, absent more concrete evidence, it is nearly
> 8  impossible to estimate with any certainty the actual amount in
> 9  controversy.

10  *Id.  See also Longmire v. HMS Host USA, Inc.*, 2012 U.S. Dist. LEXIS 167463,

11  *21 (S.D. Cal. Nov. 26, 2012) ("Although the Court can reasonably draw the

12  inference that each class member suffered some form of Labor Code violation at

13  some point during his or her employment, and was thus entitled to waiting time

14  penalties, the Court is unwilling to infer a maximum penalty for each plaintiff.")

15  *Dupre v. GM,* 2010 U.S. Dist. LEXIS 95049, at *11 (C.D. Cal. Aug. 27, 2010)

16  (The "calculation of penalties depends heavily on the number of days Defendant

17  withheld wages or wage statements and Plaintiffs' missed meal or rest breaks.

18  Without evidence supporting specific numbers for these variables, the Court cannot

19  accurately calculate the amount of civil penalties to which each class member

20  would be entitled....Therefore, the Court has no basis for considering the

21  maximum civil penalties to establish the requisite amount in controversy.")

22  *Rhoades v. Progressive Casualty Insurance Co.*, 2010 U.S. Dist. LEXIS 111026,

23  *13-14 (E.D. Cal. Oct. 7, 2010) (rejecting maximum waiting time penalty

24  calculation on ground that there was "no evidence indicating how late, on average,

25  the payments were.")

26  In *Garibay*, the Ninth Circuit again rejected an employer's maximum

27  waiting time penalty calculation, finding that the employer provided no evidence

28  supporting that assertion.  *Garibay*, 539 Fed. Appx. at 764.  In applying *Garibay*,

1 | district courts in California have rejected maximum penalty calculations. *See e.g.,*
2 | *Adams v. Medical Staffing Network Healthcare, LLC*, 2013 U.S. Dist. LEXIS
3 | 172483, *9 (E.D. Cal. Dec. 5, 2013); *Weston v. Helmerich & Payne Int'l Drilling*
4 | *Co.*, 2013 U.S. Dist. LEXIS 132930, at *12-17 (E.D. Cal. Sept. 15 2013); *Cavazos*
5 | *v. Heartland Auto. Servs.*, 2014 U.S. Dist. LEXIS 132755, at * 6-9 (C.D. Cal. Sept.
6 | 19, 2014); *Marshall v. G2 Secure Staff, LLC*, 2014 U.S. Dist. LEXIS 95620, at * 7
7 | (C.D. Cal. July 14, 2014).  In *Emmons v. Quest Diagnostics Clinical Labs., Inc.*,
8 | 2014 U.S. Dist. LEXIS 18024, at * 19 (E.D. Cal. Feb. 11, 2014), the Court
9 | explained that "[a] declaration stating the class size and the number of pay checks
10 | issued during the years prior to this action, together with assumptions as to
11 | erroneous payments for each and every employee, is not sufficient to establish that
12 | the amount in controversy exceeds $5,000,000 even under the preponderance of
13 | the evidence standard."

14 | The Ninth Circuit's reasoning in *Lowdermilk* and *Garibay* applies here.
15 | Like the defendants in those cases, Defendants have determined the number of
16 | employees who have separated during the statute of limitations, and then assumed
17 | that Defendants waited at least thirty days after separation to tender final payment
18 | of their wages.  However, Defendants provide no evidence at all to support their
19 | assumption that these employees would be entitled to the maximum amount of
20 | damages.  As in *Lowdermilk* and *Garibay*, without a reasonable ground for their
21 | assertions, Defendants fail to establish by a preponderance of the evidence that the
22 | requisite amount in controversy is met.

23 | ### G.  Defendants' Attorneys' Fees Estimate is Unsupported

24 | Using a 25% benchmark for fee awards, Defendants assume that
25 | $846,466.56 in attorneys' fees will be incurred during the course of this litigation.
26 | (Dkt. No. 1, ¶ 50).  Defendants' fees estimate is too conjectural to withstand their
27 | burden on removal.

28 | As a preliminary matter, courts are split as to whether *future* attorneys' fees

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

which have not yet been incurred may be included in determining the amount in controversy. *Gallegos v. Comerica*, 2011 U.S. Dist. LEXIS 82735, at *45-46 (C.D. Cal. Jul. 27, 2011); *see also Scalzo v. Allied Property and Casualty Insurance Co.*, 2011 U.S. Dist. LEXIS 75721, at *10 (E.D. Cal. Jul. 11, 2011) ("Defendant's prediction that an award of attorney fees could be significant is too vague to establish subject matter jurisdiction"); *Conrad Associates v. Hartford Accident & Indemnity Co.*, 994 F. Supp. 1196, 1200 (N.D. Cal. Feb. 10, 1998) ("Defendant's contention that attorney fees are likely to total at least $ 20,000 is too speculative to support its burden of establishing jurisdiction by a preponderance of the evidence.")   Rather than provide an estimate of attorneys' fees incurred at the time of the filing of the Complaint or at the time of removal, Defendant speculates as to the amount of fees that might be incurred in the future.   This is the very definition of conjecture.

Moreover, because Defendants' attorneys' fees estimate is entirely based on Defendants' amount in controversy calculations, it is unreliable because these calculations are based on impermissible speculation and conjecture.   Thus, Defendants' estimate of attorneys' fees must also be rejected.

## V.   CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court remand this case to the Los Angeles Superior Court.

Dated: April 30, 2015                                    **LAWYERS** *for* **JUSTICE, PC**

By: _____
Jill J. Parker
*Attorneys for* Plaintiff

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

16